UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>JOHN A. MORGAN,<br>*Defendant*. | No. 3:18-cv-1647 (JAM) |

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT
INCLUDING APPOINTMENT OF RECEIVER**

The United States filed suit against the defendant John A. Morgan seeking unpaid federal income tax liabilities assessed against him for the tax years 2010, 2011, 2013, and 2014 and to enforce federal tax liens attached to his controlling interests in two entities, Caritas Investment, LP ("Caritas") and Morgan 2000, LLC. In August 2020, I granted the Government's motion for partial summary judgment on Count I of its complaint, establishing Morgan's outstanding federal income tax liability of roughly $675,000 for those years.

The Government now moves for summary judgment on Count II of its complaint, seeking a determination that the federal tax liens associated with Morgan's outstanding federal tax liabilities arose upon assessment and attached to Morgan's ownership interests in Caritas, as well as the appointment of a receiver to satisfy its liens against Morgan by selling the property that Caritas holds. For the reasons set forth below, I will grant the Government's motion.

**BACKGROUND**

The following facts are taken from the parties' Local Rule 56(a) statements and supporting documents.[1] The facts are presented in the light most favorable to Morgan as the non-

---

[1] Morgan has filed four separate opposition briefs and/or statements of material facts with affidavits, exhibits, and various other documentation. *See* Docs. #103; #104; #105; #108. The Government objects to consideration of Morgan's fourth filing because it was untimely and was filed after the Government's reply. Doc. #109. In light of

1


moving party.

Between August 2013 and August 2016, the Internal Revenue Service filed special notices of federal tax liens in accordance with 26 U.S.C. § 6323(f) with the Secretary of State of Connecticut and the City of Stamford for Morgan's unpaid federal income tax liabilities for the years 2011, 2013, and 2014.[2]

In August 2020, I granted the Government's motion for partial summary judgment on the issue of Morgan's unpaid tax liabilities for 2010, 2011, 2013, and 2014. *See United States v. Morgan*, 2020 WL 4586496 (D. Conn. 2020). The ruling explained that judgment "will enter in total amount of $676,159.32, plus statutory additions from and after March 9, 2020, including interest pursuant to 26 U.S.C. §§ 6601, 6621, and 6622, and 28 U.S.C. § 1961(c), with the understanding that the sum ($676,159.32) includes an over-assessment (credit) of $2,174.18 for year 2010 that will be credited against the judgment amount owed as of January 7, 2019." *Id*. at *5.[3]

Morgan has a 99 percent direct ownership interest in Caritas.[4] He also has a 100 percent ownership interest in Morgan 2000, LLC, which in turn owns the other 1 percent interest in

---

Morgan's *pro se* status and the lack of any resulting prejudice to the Government, I will consider Morgan's filing and the Government's response. I reference each of Morgan's filings for facts that are pertinent to the resolution of this motion, but I rely primarily on Morgan's most recent counter-statement of material facts as his response to the Government's statement of material facts. *See* Doc. #105. Furthermore, to the extent that Morgan deems "false" or otherwise responds to a fact without disputing the substance of the Government's supported assertion with evidence of his own, I consider the fact to be admitted for the purpose of this motion. *See* D. Conn. L. Civ. R. 56(a)(3) ("[f]ailure to provide specific citations to evidence in the record as required by this Local Rule may result in the Court deeming admitted certain facts that are supported by the evidence in accordance with Local Rule 56(a)1" and "an order granting the motion if the motion and supporting materials show that the movant is entitled to judgment as a matter of law").

[2] Doc. #78-1 at 1-2 (¶¶ 2-3); Doc. #105 at 2-3 (¶¶ 2-3).

[3] According to the Government, "[w]ith interest the amount now exceeds $700,000." Doc. #106 at 3. To the extent that Morgan continues to contest his outstanding federal tax liability, I do not consider those arguments and related filings because his federal tax liability was established by my prior ruling in this case.

[4] Doc. #78-1 at 3 (¶ 5). Although Morgan claims this fact is false because he was given a 1 percent interest in 2006, Doc. #105 at 4 (¶ 5), that does not change that Morgan at all times relevant to this litigation had a 99 percent direct ownership interest in Caritas.

Caritas.[5] Caritas holds title to real property located at 140 Wallacks Drive in Stamford, Connecticut, which consists of an island off the coast of Stamford and a contiguous parcel of the main land of Stamford.[6] This property is also the primary residence of Morgan and his spouse, Connie Morgan.[7]

As of November 2020, when the Government filed its second motion for summary judgment, Caritas owed $339,280.97 in outstanding property taxes to the City of Stamford on this property, which accrue at an annual interest rate of 18%, and more than $70,000 in additional property tax principal became due in January 2021.[8] According to the Government, Morgan's outstanding property taxes exceeded $430,000 as of April 2021, accrue approximately $5,270 of interest per month, and another principal property tax payment of roughly $70,000 became due on July 1, 2021.[9]

Additionally, Bank of America holds a first mortgage on the property, with a payoff amount of nearly $5.2 million as of December 20, 2020.[10] The Government acknowledges that both the City of Stamford's interest in Caritas's outstanding property taxes and Bank of America's mortgage are senior to the Government's interests in the property on the basis of Morgan's federal income tax liability.[11]

---

[5] Doc. #78-1 at 3 (¶ 6). Morgan claims this fact is false and refers to the company as "Caritas (2000) LLC" rather than Morgan 2000. Doc. #105 at 4 (¶ 6). But he does not dispute the aspects of this fact that are material to this motion—that he is the sole owner of the entity and that the entity owns the other 1 percent interest in Caritas. *See ibid*. I will refer to the entity as Morgan 2000 in this ruling rather than Caritas (2000) because that is what is reflected on Caritas's filing with the bankruptcy court. *See* Doc. #78-3 at 8.

[6] Doc. #78-1 at 3 (¶ 8); Doc. #105 at 5 (¶ 8).

[7] Doc. #78-1 at 3 (¶ 9); Doc. #105 at 5 (¶ 9).

[8] Doc. #105 at 19 (¶¶ 35-36).

[9] Doc. #106 at 7.

[10] Doc. #78-1 at 3 (¶ 10); Doc. #108 at 123. Although the parties dispute the exact payoff amount at various times, the payoff amount of $5.2 million is reflected in Morgan's filings and has the most recent date of any of the payoff statements in the record. In addition, at oral argument, Connie Morgan stated that the deficiency is about $5 million.

[11] Doc. #78-9 at 3.

In 2015, Bank of America filed a foreclosure lawsuit against Caritas, obtained a default judgment, and obtained an order allowing for strict foreclosure against the property.[12] In April 2017, Caritas filed a bankruptcy petition one day before the Law Day set forth in the strict foreclosure judgment.[13] The United States was a party in interest for that bankruptcy proceeding because it had filed a notice of federal tax lien against Caritas as a nominee of Morgan.[14] Additionally, the City of Stamford filed a foreclosure action against Caritas in 2020, which the United States removed to federal court in November 2020.[15]

Shortly after Caritas's bankruptcy petition was filed, Caritas moved to sell the property free and clear of all encumbrances because it had entered into a sale of the property for $8.75 million, but the sale did not occur.[16] According to the Government, the parties then negotiated over a potential agreed sale of the property under 11 U.S.C. § 363, and "[p]rogress toward an agreed sale appeared to be gathering momentum during the summer of 2020," when Caritas "filed an application in the bankruptcy case to approve Sotheby's International Realty as a broker for the sale of the Real Property."[17]

In early 2019, Morgan and his spouse also began applying for a mortgage refinance intended to fully satisfy the outstanding claims of Bank of America and the United States.[18] The Government states that "[i]n light of the negotiations regarding the potential Section 363 sale and

---

[12] Doc. #105 at 6-7 (¶¶ 12-13); *see also Bank of America, N.A. v. Caritas Investment Limited Partnership et al*, 3:15-cv-01467-RNC.

[13] Doc. #105 at 7 (¶ 14).

[14] *Id*. at 10 (¶ 21).

[15] *Stamford v. Caritas Investment, Limited Partnership et al.*, No. 3:20-cv-01698-JAM. In its most recent filing, the Government indicated that it "intends to file a motion for consolidation [of these actions] in the near future," Doc. #111 at 6, but it has not done so to date.

[16] Doc. #105 at 7-8 (¶¶ 15-16).

[17] Doc. #78-1 at 6-7 (¶¶ 22, 25).

[18] *Id*. at 6 (¶ 23); Doc. #105 at 12 (¶ 23).

4

to allow Mr. Morgan an opportunity to pursue the mortgage refinance based on the expectancy that the loan if granted would satisfy the lienholders on the Real Property, the United States filed multiple (over 25) unopposed requests for extensions of the time frame" for briefing in the bankruptcy case.[19]

Morgan disputes that there was progress toward a § 363 agreed sale, and states that "the focus was on getting the mortgage."[20] That progress was impeded, according to Morgan, by the illness and eventual death of Caritas's counsel in late 2019 and early 2020, and by the Government's opposition to using Morgan's personal funds to start the loan process.[21] Morgan eventually was able to obtain the $63,000 to start the loan process as a personal unsecured loan from a family member.[22]

In September 2020, an issue arose between Morgan, Caritas, and Sotheby's about the listing price for the property, with Morgan believing that the parties had agreed to list it for $10.9 million and Sotheby's representing that the property should be listed for just under $9 million.[23] Caritas then withdrew the application to have Sotheby's market the property.[24]

Also in September 2020, the Government filed a motion to dismiss the bankruptcy case for cause because of Caritas's failure to pay post-petition taxes.[25] In October 2020, the

---

[19] Doc. #78-1 at 6 (¶ 24).

[20] Doc. #105 at 11-12 (¶¶ 22-25).

[21] *Id*. at 11-13 (¶¶ 23, 25).

[22] *Id*. at 12 (¶ 23).

[23] *Id*. at 13-14 (¶¶ 26-28).

[24] *Id*. at 14 (¶ 28).

[25] *Id*. at 17 (¶ 31). Although Morgan asserts that this fact is "false," he does not dispute Caritas's failure to pay property taxes or that the Government moved to dismiss the bankruptcy petition.

bankruptcy court granted the Government's motion to dismiss.[26]

The parties dispute the viability of Morgan's hopes to achieve financing that would cover his outstanding liabilities. In Morgan's view, he has had a string of bad luck with a series of near-sales and mortgages or other commitments that have been delayed and eventually fallen through.[27] In March 2021, Morgan received an appraisal valuing the property at $11 million.[28] Morgan believes he is "currently in the final stage of approval" and "is about to close on a mortgage which would pay [Caritas's property taxes] fully."[29] But Morgan does not point to any actionable loan commitment to support his assertion that he will soon close on a mortgage refinance sufficient to cover his and Caritas's outstanding debts. Morgan also states that the Government has impaired his ability to obtain a loan commitment, but the documents that he points to only show that the Government objected to his funding efforts to the extent that they involved paying nonrefundable deposits.[30]

According to the Government, the "loan commitment" that Morgan claimed to have from Harbor Equity Funding fell through in March 2021, and there had been an intractable disagreement between Caritas and Harbor Equity about whether a tenant would need to be found before any agreement would be signed.[31] The Government also notes that the IRS only served levy notices related to Morgan's deposit with Harbor Equity after the loan commitment had already fallen through, and that Harbor Equity appears to have closed and claims to have never

---

[26] *Id*. at 18 (¶ 32). Morgan states this fact "is not fully true" because the motion was denied to the extent that it sought to prevent Caritas from being able to file for bankruptcy protection again, but he does not dispute that the motion was granted to the extent that Caritas's bankruptcy petition was dismissed. *Ibid*.

[27] Doc. #104 at 7-10, 13, 17-19.

[28] Doc. #103 at 93.

[29] Doc. #105 at 11, 19 (¶¶ 23, 36).

[30] *See, e.g.*, Doc. #108 at 3-4 (¶¶ 2-4); *id*. at 87-88 (Ex. 12A); Doc. #104 at 23-24.

[31] Doc. #106 at 5-7; Doc. #106-1 at 1-2 (¶¶ 3-4).

6

received any funds for the benefit of Morgan.[32] Moreover, the Government notes that it is possible Harbor Equity or another prospective lender or purchaser will not accept the valuation provided by Morgan's appraiser.[33]

The Government now moves for summary judgment on Count II of its complaint, including the appointment of a receiver.[34] Morgan opposes the motion, and the parties have made a variety of supplemental filings.[35] According to the Government, the City of Stamford and Bank of America do not oppose the appointment of a receiver. I heard oral argument on May 11, 2021, and this ruling now follows.

## DISCUSSION

The principles governing the Court's review of a motion for summary judgment are well established. Summary judgment may be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must view the facts in the light most favorable to the party who opposes the motion for summary judgment and then decide if those facts would be enough—if eventually proved at trial—to allow a reasonable jury to decide the case in favor of the opposing party. My role at summary judgment is not to judge the credibility of witnesses or to resolve close and contested issues but solely to decide if there are enough facts that remain in dispute to warrant a trial. *See generally Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (*per curiam*); *Benzemann v. Houslanger & Assocs., PLLC*, 924 F.3d 73, 78 (2d Cir. 2019).[36]

---

[32] Doc. #106 at 5-6; Doc. #106-1 at 1-2 (¶¶ 3-5).

[33] Doc. #106 at 8.

[34] Doc. #78.

[35] *See* Docs. #103; #104; #105; #106; #108; #109; #111; #112.

[36] Unless otherwise indicated, this ruling omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

Because Morgan is a *pro se* party, his submissions must be treated with special solicitude and afforded a liberal interpretation. *See Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016). The Court's local rules ensure that a *pro se* party is thoroughly advised of the procedural requirements for opposing a summary judgment motion, *see* D. Conn. L. Civ. R. 56(b), and the Government has complied with the rule's requirement to serve on Morgan a notice detailing the rules that govern a motion for summary judgment.[37]

### *Attachment of federal tax liens to Caritas*

The Government first moves for summary judgment on Count II of its complaint to the extent that it seeks a determination that the federal tax liens associated with Morgan's outstanding tax liabilities arose upon assessment and attached to his ownership interests in Caritas and Morgan 2000.[38]

Under the tax code, "[i]f any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C. § 6321. "The statutory language authorizing the tax lien is broad and reveals on its face that Congress meant to reach every interest in property that a taxpayer might have." *United States v. Craft*, 535 U.S. 274, 283 (2002). "Moreover, a tax lien attaches automatically at the time of the assessment and remains in effect until the liability is satisfied." *United States v. Comparato*, 22 F.3d 455, 457 (2d Cir. 1994); *see also* 26 U.S.C. § 6322 ("the lien imposed by section 6321 shall arise at the time the assessment is made and shall

---

[37] Doc. #78-11.

[38] Doc. #78-9 at 13-14.

continue until the liability for the amount so assessed (or a judgment against the taxpayer arising out of such liability) is satisfied or becomes unenforceable by reason of lapse of time").

"[T]he federal tax lien does attach to an individual partner's interest in the partnership." *Craft*, 535 U.S. at 286; *see also United States v. Antiques Ltd. P'ship*, 760 F.3d 668, 672 (7th Cir. 2014) ("A lien on property of a debtor who happens to be a partner (whether or not a limited partner) in a partnership does not attach to property held by the partnership, … but it can attach to the partner's ownership interest. The liens in this case attached to the [defendants'] ownership interests in the partnerships").

Here, it is undisputed that Morgan's personal property includes his complete ownership interest in Caritas—between his 99% direct ownership interest and his complete ownership of Morgan 2000, which holds the other 1% interest—and that he held that ownership interest over the entire period relevant to this litigation. Although Morgan offers a conclusory argument that he has "not tried to refuse, neglect, or discharge any tax," and that he has "reduced the debt owed,"[39] there is no dispute in light of my ruling granting the Government's prior motion for summary judgment as to Morgan's tax liability that the IRS has made an assessment of outstanding taxes and that Morgan has not satisfied them after demand. Nor does Morgan suggest that he has fully paid the federal income taxes he owes since my ruling.

Moreover, there is not any genuine dispute that the IRS filed notices of federal tax liens against Morgan with the Secretary of State of Connecticut and the City of Stamford for his unpaid federal income tax liabilities for the years 2011, 2013, and 2014. Morgan argues that the IRS's special notice of federal tax lien in 2016 against Caritas, as "Nominee of John A. Morgan," with the City of Stamford was invalid because Connecticut does not recognize a

---

[39] Doc. #108 at 2.

9

nominee theory of liability.[40] But that argument does not have any bearing on whether a lien attached to Morgan's personal property—his complete ownership of Caritas—when the IRS made an assessment of tax and Morgan refused or neglected to pay it. In other words, the Government is not relying on a nominee theory here; it is enforcing Morgan's unpaid tax liability directly against his personal property.

Accordingly, I will grant the Government's motion to the extent it seeks a determination that the federal tax liens attached to Morgan's ownership interests in Caritas and Morgan 2000.

### *Appointment of a receiver*

The Government also "moves under 26 U.S.C. §§ 7402(a) and 7403(d) for an order appointing a receiver for the entities and to enforce the liens by selling certain real property owned by Caritas."[41] Specifically, the Government "seeks to satisfy its liens by having the Court appoint a receiver to assume control of the Entities, sell their only valuable asset, pay a large real property tax arrearage and a mortgage held by Bank of America ('BOA'), and deposit the remaining proceeds into the registry of this Court."[42]

District courts have "jurisdiction to make and issue in civil actions … orders appointing receivers, and such other orders and processes, and to render such judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws." 26 U.S.C. § 7402(a). "Section 7402(a) was intended to provide the district courts with a full range of powerful tools to ensure the enforcement of both the spirit and the letter of the internal revenue

---

[40] Doc. #105 at 3-4 (¶ 4); *see also* Doc. #108 at 5-6 (¶ 5); Doc. #112 at 2-4; *McMahon v. United States*, 2010 WL 4430512, at *4 (D. Conn. 2010) ("Nominee theory involves the determination of the true beneficial ownership of a property. When employing a nominee theory in a tax lien, the government claims a property is actually owned by the taxpayer even though legal title is in the name of a third party. To establish a valid nominee lien, the government must show that while the third party nominee holds legal title to the property, it is the taxpayer who really owns the property and enjoy its full use and benefit.").

[41] Doc. #78 at 1.

[42] Doc. #78-9 at 1.

laws, and the statute has been construed broadly, to allow courts the full panoply of remedies necessary to effectuate the enforcement of the federal tax laws." *United States v. Latney's Funeral Home, Inc.*, 41 F. Supp. 3d 24, 37 (D.D.C. 2014). The remedies under this section, including orders appointing receivers, "are in addition to and not exclusive of any and all other remedies of the United States in such courts or otherwise to enforce such laws." 26 U.S.C. § 7402(a).[43]

This expansive grant of statutory authority provides the Court with "broad discretion to appoint a receiver to liquidate property subject to federal tax liens to assist the United States in the collection of taxes," including "the authority to craft an order that specifies the powers, duties, and authority of a receiver in conducting a sale of rights and property; the terms, conditions, and procedures of the sale; and the nature, location, date, and time of the sale." *United States v. Scherer*, --- F. Supp. 3d ----, 2021 WL 1263138, at *3 (S.D. Ohio 2021).[44]

---

[43] Prior to oral argument, I requested supplemental briefing on "whether the Court has authority to order the relief that the Government requests even though not '[a]ll persons having liens upon or claiming any interest in the property involved' have been made parties in this action. *See* 26 U.S.C. § 7403(b)." Doc. #110. In his response, Morgan argues that the Court lacks the authority to appoint a receiver to enforce federal tax liens because neither Caritas nor the other creditors have been joined in this action. Doc. #112 at 1-4. But I am satisfied on the basis of the Government's response that—at a minimum—the Court has the authority to appoint a receiver based on the broad grant of authority in 26 U.S.C. § 7402(a) alone, which does not have a joinder provision. *See* Doc. #111 at 3-4; *see also Latney's Funeral Home, Inc.*, 41 F. Supp. 3d at 36-38 (appointing receiver pursuant to § 7402(a)); *United States v. Bartle*, 2002 WL 75437, at *4-*5 (S.D. Ind. 2002) (same). I am also satisfied that the interests of the other lienholders, whose interests are senior to the Government's, can be protected through the receivership process based on the Government's assurances at oral argument that they have been notified of the Government's motion, that they are not opposed to the appointment of a receiver, and that the Government plans to cooperate with them in selecting a receiver. Furthermore, as reflected in my separate order re appointment of a receiver, all lienholders will have input in the receivership process and the opportunity to object to any proposed sale by the receiver.

[44] Because the Government seeks appointment of a receiver pursuant to 26 U.S.C. § 7402(a) in the post-judgment context, the standard that governs appointment of a receiver under Fed. R. Civ. P. 66 to protect a party's interest in property during the pendency of litigation does not apply to this action. *See, e.g.*, *JDP Mortg. LLC v. Gosman*, 2020 WL 8082390, at *2 (E.D.N.Y. 2020) (discussing Second Circuit standard for appointment of receiver pursuant to Fed. R. Civ. P. 66), *report and recommendation adopted*, 2021 WL 66290 (E.D.N.Y. 2021). Additionally, whereas the prejudgment appointment of a receiver under the Internal Revenue Code requires a *prima facie* showing of tax liability and "that the Government's collection of the tax may be jeopardized if a receiver is not appointed," *United States v. O'Connor*, 291 F.2d 520, 525 (2d Cir. 1961), the Court need not make a jeopardization finding in this case because I have already granted the Government summary judgment as to Morgan's tax liability. *See United States v. Zabka*, 900 F. Supp. 2d 864, 867 (C.D. Ill. 2012) (explaining that "there is no need … to make a jeopardy determination" because "this litigation has effectively ended; judgment was entered in favor of the Government and

The Court may appoint a receiver to effectuate a sale of a wholly-owned partnership's assets by assuming control of the ownership interests to which federal tax liens have attached. As the Seventh Circuit has explained, although "there is a difference between partnership assets and the share of those assets owned by particular partners[,] … that difference evaporates" when the Government is enforcing a lien on a partnership that is completely owned by the delinquent taxpayer. *Antiques Ltd. P'ship*, 760 F.3d at 672. In such circumstances, it is appropriate for the Court to "authorize[] the receiver to enforce the government's tax lien by selling *any* assets belonging to the partnerships." *Ibid.* (emphasis in original).

The Government argues that appointment of a receiver is necessary primarily because its ability to collect Morgan's outstanding federal tax liability is threatened by the rapidly increasing claims of senior lienholders on the valuable property that Morgan owns through his complete ownership interest in Caritas.[45] Morgan does not dispute that as of November 2020, Caritas owed $339,280.97 in property taxes, and that more than $70,000 in property tax principal became due in January 2021.[46] Nor does he dispute that the delinquent property taxes are accruing at a rate of 18 percent annually.[47] Although Morgan disputes the exact amount outstanding on the Bank of America mortgage, his own filings reflect that the payoff amount is nearly $5.2 million as of December 20, 2020.[48] Combined with the outstanding federal tax liability, there is no genuine dispute that Morgan's property is encumbered by at least $6.3 million in debt that continues to

---

the only remaining task is for the Government's tax liens to be enforced against the [defendants'] property and rights to property. In this post-judgment context, the [defendants] cannot now succeed on the merits of arguing their tax liability and there is no risk of harm to the Defendants"), *aff'd sub. nom. Antiques Ltd. P'ship*, 760 F.3d 668.

[45] Doc. #78-9 at 15.

[46] Doc. #105 at 19 (¶¶ 35-36).

[47] *Ibid.* (¶ 35).

[48] Doc. #105 at 19 (¶ 37); Doc. #108 at 123.

grow, and that the federal income tax lien is junior to at least $5.6 million in debt that continues to rapidly increase.[49]

Instead, Morgan primarily responds that there is enough "equity" in Caritas because the property was appraised at a valuation of $11 million in March 2021 and that Caritas "is about to close on a mortgage which would pay [the property taxes] fully."[50] But as the Government argues, there is no evidence that the appraisal will support a realistic financing option sufficient to cover all of Morgan's outstanding liabilities including the federal tax liens, and absent such a financing option, Morgan has not shown that he will be able to pay those taxes.

Although Morgan claims that he is "currently in the final stage of approval" on a mortgage refinance, the main mortgage option that Morgan has pursued for two years with Harbor Equity has fallen through.[51] Morgan does not offer corroborated evidence refuting the Government's argument that the mortgage loan is no longer viable or that there had been an intractable disagreement between Caritas and Harbor Equity about whether a tenant would need to be found before any agreement would be completed.[52]

Based on the summary judgment record, any other potential source of mortgage refinancing is speculative. Morgan asserts that he is "working on having a mortgage loan be large enough to cover the tax debt [he] owe[s] personally," and that he has "received

---

[49] Indeed, based on Morgan's history of non-payment and the rate at which his property tax arrearage continues to grow noted above, Morgan's outstanding debt now very likely exceeds $6.4 million.

[50] Doc. #105 at 19 (¶¶ 35-36).

[51] *Id*. at 11 (¶ 23). Morgan claims that his loan commitment fell through because of the Government's interference and that the Government has "gone in full obstruction mode of the mortgage." Doc. #108 at 3. But the documents that he points to only show that the Government objected to his funding efforts to the extent that they involved paying nonrefundable deposits. *See, e.g.*, *id*. at 3-4; *id*. at 87-88 (Ex. 12A). Moreover, Morgan does not refute the Government's assertion that his loan commitment with Harbor Equity was already unviable when the IRS served its levy notices, that the levies would be released if the mortgage loan closed, and that in any event Harbor Equity appears to have closed. Doc. #106 at 5-6; Doc. #106-1 at 1-2 (¶¶ 3-5); Doc. #109 at 6-8.

[52] Doc. #106 at 5-8; Doc. #106-1 at 1-2 (¶¶ 3-4); Doc. #109 at 6-7.

commitments of a loan large enough to cover all the debts."[53] Similarly, Connie Morgan states that she understands that Morgan's financial consultant, Jeffrey Jensen, "has a backup lender who is able to have the mortgage on the property."[54] But the declaration submitted by Jensen states that he is "currently working with a new lender" because he "would like to have a backup" if the Harbor Equity loan does not go through, but he does not state that there is an actionable commitment from the new lender.[55] Morgan does not point to any actual loan commitment to support his assertion that he will soon close on a mortgage refinance sufficient to cover his and Caritas's outstanding debts.

Morgan also notes that "[t]he property is currently listed for sale with William Raveis for $14.5 million" and that "[t]he broker has a major advertisement scheduled for the spring market."[56] But that listing price far exceeds even the $11 million valuation Morgan has provided, which further suggests that it is unlikely a sale will occur in the near term without the appointment of a receiver.

Indeed, Morgan has been trying for years to secure the mortgage financing that he claims would avoid the need for a receiver. I granted Morgan 10 extensions of time to respond to the Government's motion, which was filed in November 2020, in part based on his representations that he needed the time for appraisals that would complete the mortgage financing process.[57] Morgan has also had more than two months since oral argument to secure a mortgage that he

---

[53] Doc. #108 at 2 (¶ 1).

[54] Id. at 22. At oral argument, Connie Morgan made a similar statement that Morgan has another option from a mortgage broker.

[55] Id. at 112 (Ex. 23A).

[56] Id. at 61.

[57] See, e.g., Doc. #79 at 1-2 (Morgan's first motion for extension of time stating "I will need to have the extra time to receive the actual appraisals, of the property which is most important to the response, as it will secure the mortgage, which is already committed, but just needs this last appraisal done"); see also Docs. #81, #83, #86, #87, #89, #91, #93, #95, #97, #100 (granting motions for extension of time).

claimed was near closing, but there is no record that he has done so as of the date of this ruling. All the while, Morgan's liabilities have continued to accrue, and Morgan has not made any showing that suggests that he has made payments to reduce those liabilities.

All in all, I conclude within my discretion and statutory authority under 26 U.S.C. § 7402(a) that the appointment of a receiver is necessary and appropriate for the enforcement of the tax laws under the circumstances of this case. Under the Internal Revenue Code, Americans have to pay taxes, and the Government has a right to bring collection actions when they do not. Morgan has substantial federal tax liability dating back nearly a decade. He is not entitled to indefinitely delay one of his basic obligations of citizenship to pay on his own terms—especially because doing so would put the Government at risk of not being able to collect the taxes it is owed.

Because Morgan completely owns Caritas, the Court may appoint a receiver to effectuate a sale of Caritas's real property by assuming control of Morgan's ownership interests to which the federal tax liens have attached. *See Antiques Ltd. P'ship*, 760 F.3d at 672. Without such action, Morgan's substantial property tax arrearages will continue to rapidly increase and the Government will be at a substantial risk of not collecting Morgan's full outstanding federal tax liability. Morgan has consistently attempted and failed to find the financing that would enable him to pay off his creditors including the Government, and he has not provided any convincing evidence that he will soon be able to either obtain such financing or otherwise sell the property on his own terms. There is no indication that Morgan has attempted to pay any of his outstanding liabilities recently, or that he will have the ability to do so unless this property is sold soon.

As a result, the Government has established that the appointment of a receiver—or another method that forces a sale of the property that Morgan owns through Caritas—is

necessary to protect its ability to collect Morgan's outstanding federal tax liability. Accordingly, I will grant the Government's motion to the extent that it seeks the appointment of a receiver. A separate order is attached to this ruling that details the receivership and the procedures that the receiver shall follow.[58] I will also grant the Government's request for approximately 30 days following the order granting the motion for appointment of a receiver to nominate a particular receiver.[59] The Government shall consult with the City of Stamford and Bank of America on the selection of a receiver and shall file a motion seeking approval of its designation of a receiver by no later than **September 3, 2021**.

## CONCLUSION

For the reasons set forth above, the Court GRANTS the Government's motion for summary judgment on Count II of its complaint including the appointment of a receiver (Doc. #78). I have considered all other arguments raised by Morgan even if these arguments have not been expressly addressed in this ruling.

An order detailing the receivership is attached to this ruling. The Government shall file a motion seeking approval of its designation of a receiver by no later than **September 3, 2021**.

It is so ordered.

Dated at New Haven this 5th day of August 2021.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge

---

[58] This order is a revised version of the Government's proposed order appointing receiver. *See* Doc. #78-10.

[59] Doc. #78 at 1.